## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY M. WOODS, | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0020-C |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security, | | |
| | : | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the September 23, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of (Continued)

Plaintiff alleges disability due to sciatica, mild early spondylitic disc disease at C5-6, minimal early degenerative disc disease at L3-4 and L4-5, hernia, status-post open reduction internal fixation at the right elbow with post-traumatic osteoarthritic changes, post-traumatic angulation of the coccyx, and chronic pain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.**
>
> **2.     The claimant has not engaged in substantial gainful activity since December 1, 2011, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.     The claimant has the following severe impairments: Sciatica, mild early spondylitic disc disease at C5-6, minimal early degenerative disc disease at L3-4 and L4-5, hernia, status-post open reduction internal fixation at right elbow with post-traumatic osteoarthritic changes (20 C.F.R. 404.1520(c) and 416.920(c)).**
>
> .     .     .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .     .     .
>
> **5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he can only stand or walk for four hours in an eight-hour workday, so he requires a sit/stand option. He cannot climb ladders, ropes, or scaffolds.  He can occasionally climb stairs, stoop, kneel, crouch, or crawl. He cannot work at unprotected heights. He is to avoid concentrated exposure to extreme cold, vibration, or hazards.**

<hr>

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant testified that he was born on September 2, 1965 and is 47 years old. He started the 10th grade. He worked as a ship fitter and as a supervisor for three years. He still had to do some physical work, and had to be on the boat. He was self-employed building homes, doing framing work and actually completing the shell. He did some work building modules at Northrup Grumman in 2008. He has operated a forklift. His brother owns an electrical company, and he did some work with him.

Dr. Lawrence treated him for several years. Now he goes to the Stanton Road Clinic.

He fell from a roof and broke his femur, ankle, and forearm on the right side of his body. He also broke his tailbone, and it did not heal correctly. He has recently had hernia trouble. He has [had] it for a while, but lately he started hurting. He was a passenger in an automobile that was in an accident, and he injured his neck.

He is married, and lives with his wife. He had a driver's license, but has done very little driving. He has problems with both ankles, which hurt[] all the time. The severity of the pain depends on how long he stands. He has right knee pain due to using that leg more when his left leg was broken. His knee was never broken. He has lower back pain that goes down his legs. He also has pain in his upper back, which affects his shoulder. His back will go out, and he will be in bed for a week

sometimes. He has a bad disc in the upper part of [h]is back near his left shoulder. He is left hand dominant.

He can sit, but he has to shift his position. He can sit for a couple of hours at most, and then has to stand for about a couple of hours. He can walk about 100 yards, and then he has to stop and rest by sitting down due to his back and ankles hurting. He has more back pain than ankle pain. When h[e] takes his medication, his pain level is [still] five to six out of ten. Pain relief from his medications sometimes wears off before it is time for his next dose, so he will take his medication earlier. He can lift twenty-five to thirty pounds.

Sometimes he will put dishes in the dishwasher. He [can] make the bed, and use a riding lawnmower to cut the grass. He does not do the other maintenance; his son does it. He lies down during the day a couple of times a day for about an hour or so at a time. He tosses and turns a lot even then. When he tosses and turns at night, he may have to get up and sit in a chair. He has used a cane since 2005 when he fell. His medication makes him dizzy. During the day, he will read and watch television. He can concentrate some.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible, particularly to the extent that they are inconsistent with the determined residual functional capacity. The objective and clinical evidence does not support limitation to the degree alleged.

Pursuant to the requirements of Social Security Ruling 96-7p, in assessing the credibility of the claimant's statements, the undersigned has considered factors other than the objective medical evidence alone, including: [t]he claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

The undersigned has considered the impact of the claimant's impairments on both exertional and non-exertional capacities. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing,

and pulling. Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It encompasses an individual's abilities to perform postural and manipulative maneuvers, as well as visual and communicative limitations. In addition to these activities, non-exertional capacity evaluation considers the ability to tolerate various environmental factors.

The undersigned finds he remains capable of performing light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he can only stand or walk for four hours in an eight-hour workday, so he requires a sit/stand option. He cannot climb ladders, ropes, or scaffolds. He can occasionally climb stairs, stoop, kneel, crouch, or crawl. He cannot work at unprotected heights. He is to avoid concentrated exposure to extreme cold, vibration, or hazards. This residual functional capacity is supported by the following:

A Discharge Summary from the University of South Alabama Medical Center concerning an inpatient admission from July 25, 2005 through July 28, 2005 indicate that the claimant suffered a right pilon fracture and a right radius and ulnar fracture after falling from a roof on July 25, 2005. He underwent open reduction repair of both right extremity fractures, including a right radial head replacement. He had no complications, and was diagnosed with instructions to follow up at the Stanton Road Orthopedic Clinic on August 8, 2005. The claimant eventually returned to work, and worked until 2011, although he did not report earnings for all the years he worked.

On February 10, 2009, he was placed on light duty for three days, after which he could return to a full duty status. His right knee had been sore to the touch, but he denied pain when examined.

His doctor, James Lawrence, M.D., noted on November 13, 2010, that he had known the claimant for many years, but had not seen him in a while. The claimant had some generalized pain, and still wanted to work. An anti-nuclear antibody test and rheumatoid factor test were negative. His knee x-rays were "relatively normal." Lumbar x-rays showed degenerative disc disease at L4-5 and post-traumatic angulation of the coccyx.

X-rays of the claimant's cervical spine performed on February 27, 2012, revealed, "There is mild spondylitic disc disease at C5-6 including mild disc space narrowing, endplate sclerosis and small anterior spondylitic spurs. There is normal alignment. There is no prevertebral soft tissue swelling. The atlantodental interval is normal. Impression: 1. Mild early spondylitic disc changes C5-6. 2. No acute abnormality."

X-rays of the lumbar spine performed the same day showed, "AP and lateral views compared to 12/8/09. There is mild early spondylitic disc space narrowing at L3-4 and L4-5 with endplate sclerosis and small anterior spurs neighboring the L3-4 level. This has not significantly changed. There is no listhesis. There are no compression deformities. There are no acute abnormalities. Impression: Minimal early degenerative disc disease at L3-4 and L4-5 unchanged. 2. No acute abnormality."

Left ankle x-rays performed showed, "There is a well healed fracture deformity of the distal tibial and fibular metaphyses. There is evidence of previous hardware with drill holes. This is anatomically aligned. There is no significant angulation. No acute abnormalities are noted. Impression: 1. Well healed fractures of the distal tibial and fibular metaphyses. 2. No acute abnormality."

Right ankle x-rays revealed, "There are 2 cannulated screws bridging a well healed medial malleolar fracture. There are 2 anterior posterior cannulated screws in the tibial metaphysis as well. The more proximal screws demonstrate posterior transcortical extensions of approximately 1 cm. There is no screw fracture. No acute abnormalities are noted. Impression: 1. Postoperative changes as described above. 2. No acute abnormality."

X-rays of the right elbow indicated, "There is an olecranon compression plate and screws in place bridging a well healed proximal ulnar fracture. There has been resection of the radial head with radial head prosthesis in place. There are at least moderate post traumatic osteoarthritic changes of the elbow joint with articular surface irregularity, marginal sclerosis and periarticular spurs. No acute abnormalities are noted. Impression: 1. Post op changes in the proximal elbow and radius with compression plate and screws bridging a well healed olecron process fracture with a radial head prosthesis in place. 2. At least moderate post traumatic osteoarthritic change of the elbow joint." Upon review of the x-rays, Dr. Lawrence noted, "X-rays have only shown minimal change but I am convinced this is more severe."

Dr. Lawrence reported on June 26, 2012, "He was denied disability and I think I can see the reason. Imaging is just not revealing in this case. The physical is more revealing. Physical examination: He has a positive straight leg raising sign, a right elbow contracture and some warmth in his ankles." In a letter dated July 5, 2012, Dr. Lawrence wrote, "Mr. Woods is being treated by me for severe osteoarthritis and sciatica. With regards to the sciatica, x-ray findings have not been helpful in the diagnosis, and he does not have health insurance that would allow us to obtain an MRI scan of his lumbar spine to see nerve impingement. However, clinically it is definite. His arthritis is clearly causing chronic severe pain. Your consideration in this matter will be appreciated."

Thoracolumbar x-rays performed on March 28, 2013 showed, "History—[motor vehicle accident] one week prior with low back and left side pain. There is very mild anterior spondylitic spurring at L3-4. No compression fracture is seen. Impression: 1. Mild anterior spondylitic spurring L3-4. 2. No acute abnormality."

Grant Anderson, M.D., examined the claimant on May 1, 2013. Among other things, the claimant had an easily reductible umbilical hernia. Musculoskeletal examination showed normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. No edema was present. Deep tendon reflexes were normal and symmetric. Psychiatric examination indicated that he was oriented to time, place, person, and situation. He had appropriate mood and affect. He was only prescribed pain medication. His only musculoskeletal diagnosis was back pain.

At the hearing, the claimant reported that his medications were Lortab 10mg, Gabapentin 300 mg, Carbamazepine 300mg, Cyclobenzaprine 5mg, Meloxicam 15mg, Pravastatin 20mg, and Citalopram 10mg.

As for the opinion evidence, Charles K. Lee, M.D., a State agency medical consultant, examined the record on August 22, 2012, and determined that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant could stand/walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday.[2] The claimant's ability to push and/or pull including operation of foot and hand controls was unlimited, other than as shown for lifting/carrying. The claimant could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He could frequently balance, but only occasionally stoop, kneel, crouch, or crawl. He was to avoid concentrated exposure to extreme cold, vibration, or hazards. The claimant did not have any manipulative limitations, visual limitations, or communicative limitations. Dr. Lee provided a discussion of his decision rationale . . ., noting that Dr. Lawrence's medical source statements were considered and given only partial weight as the opinions were not totally substantiated by the objective medical evidence. The residual functional capacity determination is supported by Dr. Lee's opinion.

The Physical Capacities Evaluation . . . and the Clinical Assessment of Pain Form . . . completed by Dr. Lawrence[] have been considered and accorded little weight, as they are inconsistent with Dr. Lee's opinion and with the objective evidence including the x-rays in Exhibits 3F and 18F and the clinical exam findings in Exhibit 19F.

---

[2]    Lee also specifically noted that plaintiff's ability to stand/walk was limited to 4 hours out of an 8-hour workday "due to post traumatic arthritis [of the] lower extremities." (Tr. 323.)

.      .      .

In any case centered on an individual's subjective complaints the issue of credib[ility] is very important. In this case, the claimant's allegations of debilitating symptoms and limitations are not credible. First, the objective evidence does not establish conditions to produce the very serious symptoms and limitations the claimant alleged at the hearing. Second, the relevant treating source records show that the claimant was not complaining of the very serious symptoms he alleged at the hearing—symptoms that the claimant testified [were] of a longstanding nature. Viewing all the evidence together, the undersigned finds that the claimant's subjective allegations of serious and debilitating symptoms and limitations cannot reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record (as required by 20 C.F.R. 404.1529 and 416.929).

Having considered the whole of the evidence, the undersigned concludes the claimant is capable of performing work within h[is] determined residual functional capacity.

**6.     The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).**

.      .      .

**7.     The claimant was born on September 2, 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).**

**8.     The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.      .      .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by

Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as mail sorter, D.O.T. 209.687-026, light, unskilled work (SVP-2), with 900,000 jobs in the national economy and 45,000 jobs in the regional economy; parking lot attendant, D.O.T. 915.473-010, light, unskilled work (SVP-2), with 500,000 jobs in the national economy and 25,000 jobs in the regional economy; companion, D.O.T. 309.677-010, light, unskilled work (SVP-2), with 850,000 jobs in the national economy and 40,000 jobs in the [regional] economy; [and] information clerk, D.O.T. 237.367-018, light, unskilled work (SVP-2), with 950,000 jobs in the national economy and 50,000 jobs in the regional economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles in that a sit/stand option is not discussed in the D.O.T. However, the undersigned is satisfied that [] the vocational expert's experience with the listed jobs is sufficient to justify the finding that the jobs allow a sit/stand option in the number of jobs listed.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2011, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).**

(Tr. 23, 24, 25-29, 30, 31 & 31-32 (internal citations omitted; footnote added; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

### DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant establishes that he cannot perform his past relevant work, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

---

[3]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Woods asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to assign controlling weight to the opinions of his treating physician, Dr. James Lawrence; and (2) the ALJ committed reversible error in substituting the opinion of a non-examining reviewing state agency physician for the opinion of plaintiff's treating physician in violation of Eleventh Circuit case law under *Coleman v. Barnhart,* 264 F.Supp.2d 1007, 1010-1011 (S.D. Ala. 2003) and SSR 96-6p by finding plaintiff can perform light work. The undersigned considers these claims together within the context of the ALJ's RFC assessment.

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he can only stand or walk for four hours in an eight-hour workday, so he requires a sit/stand option. He cannot climb ladders, ropes, or scaffolds.  He can occasionally climb stairs, stoop, kneel, crouch, or crawl. He cannot work at unprotected heights. He is to avoid concentrated exposure to extreme cold, vibration, or hazards.**" (Tr. 25 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue,* 2012 WL 1020428,

*9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[5]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not

---

[5]      In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[6]      It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the ALJ accorded only little weight to the RFC assessment (and pain assessment) of plaintiff's treating physician, Dr. James Lawrence, and, instead, relied upon the RFC assessment completed by a non-examining, reviewing physician, Dr. Charles K. Lee, as support for his RFC determination (*compare* Tr. 29 ("The residual functional capacity determination is supported by Dr. Lee's opinion.") *with* Tr. 320-327 (Lee's RFC assessment)). And perhaps the ALJ's reliance upon Lee's RFC assesent would have sufficed had Lee properly "linked" his RFC findings/limitations to substantial evidence in the record, as is even directed on the form he completed (*compare* Tr. 322 ("Describe how the **evidence substantiates your conclusions.** (Cite specific clinical and laboratory findings, observations, lay evidence, etc.).") *with* Tr. 323 ("Explain how and why the evidence supports your conclusions in items 1 through 5.")); however, all Lee did was "qualify" his answer to question 3, which asked how long plaintiff can stand and/or walk during an 8-hour workday, by stating that plaintiff's standing and walking would be "limited [to] 4 hrs/8-hr workday due to post

14

traumatic arthritis [of the] lower extremities." (Tr. 323.) In other words, Lee did not

"link" his noted exertional limitations—that is, his lift/carry, sit, stand/walk, and

push/pull "limitations"[7]—to evidence in the record, as directed (*id.*) and as required by

this Court, and the ALJ did not separately explain, when summarizing the evidence of

record, how the medical evidence supported each component of his RFC assessment.

Accordingly, the undersigned finds that the ALJ's RFC assessment fails to provide an

articulated linkage to the medical evidence of record,[8] and, therefore, this cause need be

remanded to the Commissioner of Social Security for further consideration not

inconsistent with this decision.

On remand, in addition to reconsidering his "physical" RFC determination, the

ALJ should explain more fully his reasons for rejecting Dr. Lawrence's findings on the

Clinical Assessment of Pain form he completed on July 5, 2012 (Tr. 318-319). After all, as

---

[7]     For instance, Dr. Lee specifically found plaintiff's ability to push and/or pull (including operation of hand/foot controls) was "unlimited, other than [as] shown for lift[ing] and/or carry[ing.]" (Tr. 323.) However, he fails to cite any evidence in the medical record which supports this finding and a review of the medical evidence of record by the undersigned tends to suggest that Dr. Lawrence's findings that plaintiff cannot use his arms/hands and legs/feet for pushing and pulling arm or leg controls (*see* Tr. 316) actually are supported by the record inasmuch as x-rays of the right elbow reveal "[a]t *least* moderate post traumatic osteoarthritic change of the elbow joint[]" (Tr. 286 (emphasis supplied)) and examination findings reveal "contracture" (that is, a shrinkage or shortening) of the right elbow (Tr. 315 & 279), warmth/swelling in the ankles (Tr. 315), positive straight leg raising sign (Tr. 315), and muscle spasms (Tr. 275).

[8]     The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC.  *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by failing to  "show his work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

even the ALJ recognized (Tr. 30), this is a classic "pain" case, and the majority of the

evidence of record certainly reflects that plaintiff experiences chronic pain (Tr. 270-271,

275-280, 287-288, 315, 317, 343-345, 353, 355, 359-360, 364, 368, 372 & 375). Here, the ALJ

"lumped together" his decision to give little weight to Lawrence's "CAP" with his

decision to give little weight to Lawrence's PCE, noting both were "inconsistent with

Dr. Lee's opinion and with the objective medical evidence including the x-rays in

Exhibits 3F and 18F and the clinical exam findings in Exhibit 19F." (Tr. 29.)[9] Reliance on

Dr. Lee's opinion, however, amounts to only so much circular reasoning since it is Lee's

apparent belief that the CAP is not substantiated by the objective evidence (*see* Tr. 326),

---

[9]      The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue*, 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's pain assessment must be supported by substantial evidence. *Compare id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)) *with D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

evidence to which Lee makes no specific reference in this portion of his decision (*see id.*).

Moreover, the ALJ's reliance on the x-ray findings and the clinical exam findings of Dr.

Grant Anderson ignores not only Anderson's consistent assessment that he was treating

Woods for chronic back pain (*see* Tr. 359-377) and the doctor's plan to refer plaintiff to a

pain specialist upon the establishment of disability and entitlement to insurance (Tr.

364) but, more importantly, Dr. Lawrence's clinical findings—most notably, positive

straight leg raising sign, a right elbow contracture, warmth/swelling in the ankles,

muscle spasms—and specific opinion that if there was insurance to obtain an MRI of the

lumbar spine that test would confirm his clinical findings that there is nerve

impingement causing plaintiff's chronic severe pain (Tr. 317).  In other words, because

there is no question but that plaintiff experiences chronic pain, it was necessary for the

ALJ to explain in greater detail why the clinical findings noted by Dr. Lawrence—which

were not rejected by the ALJ—would not cause pain which would distract plaintiff from

adequately performing daily activities or work, that physical activity would not greatly

increase plaintiff's pain to the point it would cause distraction from task or total

abandonment of task, and that the pain and/or medication side effects could not be

expected to be severe and limit effectiveness due to distraction, inattention or

drowsiness.[10]

---

[10]      The ALJ performed no analysis (*see* Tr. 29-30) directed to the pain/side effects finding by Dr. Lawrence; instead, he simply listed plaintiff's medications (*see* Tr. 29 ("At the hearing, the claimant reported that his medications were Lortab 10mg, Gabapentin 300mg, Carbamazepine 300mg, Cyclobenzaprine 5mg, Meloxicam 15mg, Pravastatin 20mg, and Citalopram 10mg."). It is not difficult to discern that Lortab 10, which is indicated for the treatment of moderate to moderately severe pain, may impair the physical and/or mental abilities required for certain everyday hazardous tasks like driving, http://www.medicineonline.com/drugs/1/1238/LORTAB-10-500 (last visited September 24, 2015, 9:59 a.m.); Gabapentin, which is indicated for the management of postherpetic neuralgia in adults, causes somnolence and dizziness, such that patients are warned to refrain from driving or operating complex machinery until they have gained enough experience on the drug (Continued)

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 24th day of September, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

to assess whether it impairs their ability to perform such tasks, http://www.drugs.com/pro/gabapentin.html (last visited September 14, 2015, 10:02 a.m.); Carbamazepine, which is indicated for the treatment of nerve pain, can cause dizziness and drowsiness and impair thinking and reactions such that people who take it should take caution if they drive or do anything that requires them to be alert, http://www.drugs.com/carbamezepine.html (last visited September 24, 2015, 10:05 a.m.); Cyclobenzaprine, a muscle relaxant indicated for the treatment of skeletal muscle conditions such as pain, can cause dizziness, drowsiness, concentration problems and impair thinking and reactions such that those who take it should take caution if they drive or do anything requiring alertness, http://www.drugs.com/cyclobenzaprine.html (last visited September 24, 2015, 10:06 a.m.); and Meloxicam, an anti-inflammatory indicated for the treatment of pain or inflammation caused by osteoarthritis or rheumatoid arthritis, may cause dizziness, http://www.drugs.com/meloxicam.html (last visited September 24, 2015, 10:07 a.m.). In light of the fact that plaintiff is taking five drugs for the treatment of his pain, which could certainly account for plaintiff being "queasy-headed . . . most of the day" and uncomfortable "behind the wheel" (Tr. 49), the Court is uncertain how Dr. Lawrence was "off base" in noting that plaintiff's "[p]ain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Tr. 319.) The ALJ will have the opportunity to further explain his rejection of Dr. Lawrence's opinion in this regard on remand.